**KOCH SUPPLIES, INC., a Missouri Corporation, Plaintiff–Appellee,**

**v.**

**FARM FRESH MEATS, INC., Paul Childress, Jr. and Joy B. Childress, Defendants–Appellants.**

**No. 79–2123.**

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1980.

Taylor D. Wilkins, Jr., Bayless E. Biles, Bay Minnette, Ala., for defendants–appellants.

---

Ambrecht, Jackson, DeMouy, Crowe, Holmes & Reeves, Broox G. Holmes, Grover E. Asmus, II, Mobile, Ala., H. Fred Northcraft, Kansas City, Mo., for plaintiff–appellee.

Before VANCE and GARZA, Circuit Judges, and ALLGOOD,* District Judge.

ALLGOOD, District Judge:

This appeal is from the order of the district court entering summary judgment against appellants, Farm Fresh Meats, Inc. (Farm Fresh), on a counterclaim arising out of Farm Fresh's purchase of a smokehouse from appellee, Koch Supplies, Inc. (Koch). Koch is a corporation incorporated under the law of Missouri with its principal place of business in Missouri, while Farm Fresh is an Alabama corporation with its principal place of business in Alabama. Defendants–appellants, Paul Childress, Jr., and Joy B. Childress, President and Secretary–Treasurer, respectively, of Farm Fresh, are citizens of Alabama. The district court's ruling on the summary judgment was based principally on the disclaimers of warranty and the "as is" qualification in the smokehouse sales agreement, which the court found not to have been unconscionable. For reasons discussed below, we reverse.

In 1975 Paul and Joy Childress of Baldwin County, Alabama, formed Farm Fresh Meats, Inc., a meat processing business, as a natural extension of their lifelong successful cattle and livestock business. In 1976 Farm Fresh contracted to purchase a fully equipped prefabricated meatpacking and processing plant from Koch. During the course of performance of that contract, Paul Childress initiated discussions concerning the possible purchase of a smokehouse with a Koch representative, Tom Patel, who was overseeing the sale of the plant. Patel recommended that Farm Fresh purchase a small one–truck smokehouse initially, with a view toward investing in a larger one when market conditions warranted it. When Childress rejected this suggestion and decided to purchase a larger smokehouse, Patel turned the transaction over to Tom Carter, a salesman for Koch who had more experience with smokehouse equipment. Late in September an agreement was finalized for the purchase of a two–truck smokehouse; however, about October 10, 1976, Childress telephoned Carter and cancelled that order, indicating that he wanted to purchase an even larger smokehouse. Upon being informed of the prices involved, Childress decided on a six–truck smokehouse.

A sales contract, in form an "Equipment Lease", providing for monthly rental payments of $1,200.71 over a five year period and granting Farm Fresh, as "Lessee", an option to purchase the "6–TRUCK FREELAND SMOKEHOUSE" for $1.00 after payment of all rentals, was mailed by Koch to Childress to be signed on behalf of Farm Fresh. One of the contract provisions provided:

> REPAIRS: Lessor shall not be obligated to install, erect, test, adjust, service or make any repairs or replacements; Lessee shall not incur for Lessor's account or liability any expense therefor without Lessor's prior written consent. Lessee shall inspect the equipment within 48 hours after its receipt; unless within said time Lessee notifies Lessor, stating the details of any defects, Lessee shall be conclusively presumed to have accepted the equipment in its then condition. Thereafter Lessee shall effect and bear the expense of all necessary repairs, maintenance, operation and replacements required to be made to maintain the equipment in good condition, wear and tear excepted.

Below the substantive terms on the front page and in type which was half the size of the other type on the page was the following statement: "The undersigned agree to all of the terms and conditions set forth above and on the reverse side hereof and in witness whereof, they hereby execute this lease." On the reverse side of the agreement was the following provision:

* District Judge of the Northern District of Alabama, sitting by designation.

NO WARRANTY: Lessor, not being the manufacturer of the equipment, nor manufacturer's agent, *makes no warranty or representation, either express or implied, as to the fitness, quality, design, condition, capacity, suitability, merchantability or performance of the equipment or of the material or workmanship thereof, it being agreed that the equipment is leased "as is" and that all such risks, as between the Lessor and the Lessee, are to be borne by the Lessee at its sole risk and expense.* Lessee accordingly agrees not to assert any claim whatsoever against the Lessor based thereon. Lessee further agrees, regardless of cause, not to assert any claim whatsoever against the Lessor for loss of anticipatory profits or consequential damages. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding; all prior conversations, agreements or representations related hereto and/or to said equipment are integrated herein. No modification hereof shall be binding unless in writing signed by Lessor. (Emphasis supplied to delineate words appearing in boldface print in the original).

Paul Childress signed the front page of the contract without further discussion with Koch and mailed it back to Koch. He did not sign or initial the reverse side of the agreement. The purchase of the smokehouse was financed by C.I.T. Corporation, to whom Koch assigned the Equipment Lease.

A six–truck smokehouse was shipped by Koch to Farm Fresh on December 1, 1976 and arrived on December 4. The smokehouse, which was labeled Koch rather than Freeland, required two to three weeks to be set up and made ready for use. The first attempt to smoke meat in the smokehouse was made under the guidance of a Koch representative. This attempt resulted in a bleaching of the meat. It appears that in very humid weather conditions the meat processed in the house loses its color and becomes unmarketable. Koch representatives attempted to correct this flaw in operation three or four times over a six–month period, but were unsuccessful. When it ap-

peared that the smokehouse was not going to function, Farm Fresh stopped making payments to C.I.T. on the smokehouse and to Koch on the meat packing facility. C.I.T. and Koch commenced separate suits against Farm Fresh in the United States District Court for the Southern District of Alabama on the same day, seeking, respectively, to compel payment for the smokehouse and the meat packing facility. C.I.T. recovered the price of the smokehouse in a separate lawsuit, *C.I.T. Corporation v. Farm Fresh Meats, Inc.,* Civil Action No. 77–681–P (S.D.Ala.1977), and Koch was granted summary judgment for the balance of payments due from Farm Fresh for the purchase of the meat packing facility.

Farm Fresh had in its answer to Koch's complaint, filed a counterclaim against Koch seeking, in essence, a refund for the smokehouse and consequential damages resulting from the sale of the defective smokehouse. The lower court granted Koch summary judgment on the counterclaim based on its determination that the "No Warranty" clause in the lease effectively excluded the warranty under Alabama law and that the clause was not due to be held unconscionable.

Farm Fresh contends that the forty–eight hours notice provision in the "Repairs" clause is manifestly unreasonable and provides a remedy which fails of its essential purpose when applied to defects that are not apparent until the smokehouse is operational. Farm Fresh further contends that the Equipment Lease was unconscionable because it disclaimed all warranties.

The court finds that the district court's order granting Koch summary judgment is due to be reversed and the cause remanded for trial. The "Repairs" provision of the contract implies that if Koch were notified of any defect within forty–eight hours after Farm Fresh's receipt of the smokehouse then Koch would either repair, replace, or allow Farm Fresh to reject the smokehouse because of the defect. After the forty–eight hours period Farm Fresh would be

conclusively presumed to have accepted the smokehouse in its then condition and would be responsible for the repairs and maintenance of the smokehouse. The Alabama Uniform Commercial Code provides that contract provisions requiring action within a certain time may be fixed by agreement if that time is not "manifestly unreasonable." Ala.Code § 7–1–204(1) (1975).[1] Comment 1 explains that this provides for disregarding a clause which fixes a time so unreasonable that it amounts to eliminating all remedy under the contract. *Id.* Although the district court's opinion was based upon the theory that the "No Warranty" clause provided for the exclusion of all warranties and, thus left Farm Fresh with absolutely no remedy,[2] we hold that the "Repairs" clause must be read as giving Farm Fresh a remedy which includes the rejection of a nonconforming smokehouse[3] if the nonconformity or defect is discovered within forty–eight hours. However, because the defects in the smokehouse were latent and could not be discovered within forty–eight hours since it required two to three weeks to install the equipment, we hold that the forty–eight hours time provision is manifestly unreasonable and is due to be disregarded. *See Neville Chemical Co. v. Union Carbide Corp.*, 294 F.Supp. 649 (W.D.Pa.1968), *affirmed in part and vacated in part on other grounds*, 422 F.2d 1205 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970).

An argument which should have been considered by the district court in making its decision but was rejected as not being relevant to the outcome of the case is the question of revocation of acceptance under Ala.Code § 7–2–608.[4] That provision allows a buyer to revoke his acceptance of goods if there is a nonconformity which substantial-

---

1. § 7 1 204 provides:

   (1) Whenever this title requires any action to be taken within a reasonable time, any time which is not manifestly unreasonable may be fixed by agreement.

   (2) What is a reasonable time for taking any action depends on the nature, purpose and circumstances of such action.

   (3) An action is taken "seasonably" when it is taken at or within the time agreed or if no time is agreed at or within a reasonable time.

   Ala.Code § 7–1–204 (1975).

   Official Comment 1 to § 7–1–204 explains the purpose of the above provision.

   1. Subsection (1) recognizes that nothing is stronger evidence of a reasonable time than the fixing of such time by a *fair* agreement between the parties. However, provision is made for *disregarding a clause which whether by inadvertence or overreaching fixes a time so unreasonable that it amounts to eliminating all remedy under the contract.* The parties are not required to fix the most reasonable time but may fix any time *which is not obviously unfair as judged by the time of contracting.*

   *Id.* (Emphasis added).

2. The district court found that the exclusion of warranties was not unconscionable in this case. We decide this case on the basis of a manifestly unreasonable time limit and a subsequent revocation of acceptance and do not reach the unconscionability issue, because if acceptance is revoked, the warranty question is never reached. We do note the desirability of evidence, such as initialing the clause providing for the warranty exclusion, which would indicate that the buyer understood that he was agreeing to pay $57,000 for a smokehouse which was not required by the contract to be operable.

3. We reject Koch's argument that the only defects to which this clause refers are those visible defects such as delivery of a wheel barrow instead of a smokehouse.

4. § 7–2–608 provides:

   Revocation of acceptance in whole or in part.

   (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

   (a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

   (b) Without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

   (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

   (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

   Ala.Code § 7–2–608 (1975).

ly impairs its value to him if he accepted the goods without discovery of the nonconformity because of the difficulty of discovery before acceptance or, if acceptance is made with knowledge of the nonconformity, acceptance was made on the reasonable assumption that the nonconformity would be cured and the revocation must occur within a reasonable time after the buyer discovers the nonconformity. It is arguable here that Farm Fresh accepted the smokehouse within the first forty–eight hours without knowledge of the defects because of the difficulty of discovery of the defects, but since the forty–eight hours provision is manifestly unreasonable and is to be disregarded, the acceptance after discovery two to three weeks after receipt was reasonable because of the parties' past dealings and the assumption that Koch's continuing efforts to cure the defects would be successful. The attempted revocation, six months after the receipt of the smokehouse, was within a reasonable time in view of the continuing efforts of Koch to repair the smokehouse.

The court notes, also, the possible existence of confusion with regard to the facts found by the district court in its opinion granting summary judgment to Koch on the counterclaim. The district court in Findings of Fact, Paragraph 2 and n.2, implies that the smokehouse was the subject of the summary judgment granted to the plaintiff on Count One of the complaint. However, it appears that the meatpacking plant, rather than the smokehouse was the subject of Count One. This matter will undoubtedly be clarified upon trial of the case.

REVERSED AND REMANDED.